JUSTICE SHEEHY,
dissenting:
I.
For a long time I have had the moral conviction that exacting the penalty of death in criminal cases was improper. I have come to the legal conviction that the death penalty is indeed cruel and unusual punishment and so prohibited by the Eighth Amendment to the United States Constitution. The Cruel and Unusual Punishment Clause is applicable to the states through the Due Process Clause of the Fourteenth Amendment. Robinson v. California (1962), 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758.
This case comes to us on a direct appeal and also under the automatic review of death penalty sentences pursuant to § 46-18-307, MCA. Whether on appeal or under automatic review, this Court is required under § 46-18-310, MCA, to determine whether or not the death sentence was properly imposed by the District Court. The automatic review provision was adopted by the legislature in 1977, as an obvious response to Furman v. Georgia (1972), 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346. The history of the action by the states following Furman is set out in Pulley v. Harris (1984), 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29. There the Supreme Court stated:
“Harris’s submission is rooted in Furman v. Georgia, 408 U.S. 238 (1972). In Furman, the court concluded that capital punishment, as then administered under the statutes vesting unguided sentencing discretion in juries and trial judges, had become unconstitutionally cruel and unusual punishment. The death penalty was being imposed so discriminatorily (408 U.S. at 240) (Douglas, J. concurring) so wantonly and freakishly, id. at 306, (Stewart, J. concurring), and so infrequently, id. at 370 (White, J. concurring), that any given death sentence was cruel and unusual. In response to that decision, roughly two-thirds of the States promptly redrafted their capital sentencing statutes in an effort to limit jury discretion and avoid arbitrary and inconsistent results. All of the new statutes provide for automatic appeal of death sentences. Most, such as Georgia’s, require the reviewing court, to some extent at least, to determine whether, considering both the crime and the defendant, the sentence is disproportionate to that imposed in similar cases. Not every State *409 has adopted such a procedure. In some States, such as Florida, the appellate court performs proportionality review despite the absence of the statutory requirement; in others, such as California and Texas, it does not.”
Pulley, 465 U.S. at 44, 104 S.Ct. at 876.
The appeal here and the automatic review provisions bring to this Court once again yet another death penalty case and brings me face to face with the ultimate question, is the imposition of the death as prescribed by Montana statutes in capital cases cruel and unusual punishment and so forbidden by the United States Constitution? Indeed, does the imposition of the death penalty also offend our State constitution which likewise prohibits cruel and unusual punishment (Art. II, § 22, 1972 Mont. Const.)? I have firmly concluded that it does offend the federal and state constitutions to impose a death penalty and in that conclusion I align myself with the position taken by Mr. Justice William Brennan in Furman v. Georgia, supra. There, Justice Brennan discussed in full terms the background of the death penalty history, the reasons given for it and the reasons against it, and concluded finally that the death penalty was unconstitutional.
Justice Brennan based his conclusion upon four principles: (1) the punishment must not be so severe as to be degrading to the dignity of human beings; (2) the imposition of the sentence must not be arbitrary; (3) the severe punishment must not be unacceptable to contemporary society; and, (4) the severe punishment must not be excessive.
Whether the death penalty is acceptable to contemporary Montana society is arguable. When the state constitution was submitted to the voters in 1972, they were given a chance to vote on the acceptability of the death penalty. It was widely endorsed. Yet, the last death penalty imposed and carried out in Montana before the adoption of the 1972 Montana Constitution was in 1944. For at least 30 years, until the adoption of the provisions of automatic review, the death penalty had not been imposed in the state. Until 1966, the determination of whether the death penalty should be imposed was given first to the discretion of the jury, and, if the jury left the punishment to the court, then to the presiding judge. Section 94-2505, R.C.M, (1947). Thus, while the voters in 1972 as an abstract proposition accepted the death penalty, juries and after them the district judges, when faced with real cases, did not impose the death penalty. We frequently state in support of the jury system, that be *410 cause of their very number, a jury represents the sense of community values in.deciding cases. The U.S. Supreme Court once said that jury reluctance in death cases possibly reflected “the humane feeling that this most irrevocable sanction should be reserved for a small number of extreme cases.” Gregg v. Georgia (1976), 428 U.S. 153, 182, 96 S.Ct. 2909, 2929, 49 L.Ed.2d 859. The Montana experience since 1977 indicates that judges are far more likely than juries to impose the death sentence. A district judge acting singly cannot be said to represent the wide spectrum of public sentiment on social issues.
Moreover, at the time of the state vote on the death penalty in 1972, the only mode of execution allowed by our law was hanging by the neck until dead. In 1983, (Ch. 411, Laws of Montana (1983)) the legislature amended the law of § 46-19-103, MCA, to permit the defendant to choose death by lethal injection of an “ultra-fast-acting” barbiturate instead of hanging. In itself, this amendment is an admission by the legislature that death by hanging is too horrible to contemplate. Whether death by lethal injection of a drug is less horrible, we do not know. None has experienced it yet in Montana as punishment for a crime. We have no reports from other states on the subject, largely because of “that undiscovered country from whose bourne no traveler returns to tell us of the way.” What the change from hanging to lethal injection does tell us is that Montanans are seeking an easier way to end human life for crime. In truth, there is no easy way.
Another of Justice Brennan’s tests as to whether punishment is cruel and unusual is whether it is imposed arbitrarily. As I explain below, in this case the death penalty was imposed arbitrarily, and the present statutes adopted by Montana allow such arbitrary treatment.
It was not easy for me to conclude on constitutional grounds that the death penalty was improper, even though I oppose it on moral grounds. When first I came to this Court, I was imbued with the responsibility of judges to uphold the constitution and thus subordinated my moral feelings to my thought that I should put those aside and decide this type of case solely on what I perceived to be legal grounds. In fact, I authored two opinions affirming death penalties. State v. Coleman (1979), 185 Mont. 299, 605 P.2d 1000; State v. Fitzpatrick (1980), 186 Mont. 187, 606 P.2d 1343. All through the 1980s, these cases have been grinding their way through the federal system and most recently, each has been reversed and remanded. *411 Execution by death of several other defendants in Montana are on hold because of further proceedings, including the oldest case, where, even though the death penalty was affirmed in 1976, no execution date is now set as far as I know. State v. McKenzie (1976), 171 Mont. 278, 557 P.2d 1023. Thus, even though the death penalty has been on the books at all times no person has been executed in Montana in the last 45 years as punishment for crime. There has been no more than slight public reaction. That, too, tells us something about community standards and values.
II.
As is stated above, the Montana statutes permit the imposition of the death penalty arbitrarily. In this case, the court in fact acted arbitrarily in finding factors for the imposition of death.
It is provided in § 46-18-305, MCA, that the District Court in determining whether to impose a sentence of death or imprisonment “shall take into account the aggravating and mitigating circumstances enumerated in § 46-18-303, MCA, and § 46-18-304, MCA, and shall impose a sentence of death if it finds one or more of the aggravating circumstances and finds there are no mitigating circumstances sufficiently substantial to call for leniency.” There are nine aggravating circumstances listed in § 46-18-303, MCA, and eight mitigating circumstances listed in § 46-18-304, MCA. When read in conjunction with § 46-18-305, MCA, a proper interpretation would be that the District Court is limited in determining aggravating factors to § 46-18-303, and in determining mitigating circumstances, to § 46-18-304.
Opposed to the concept that the court is limited under § 46-18-305 to the statutory aggravating circumstances and mitigating circumstances is the language of § 46-18-302. That section provides that the District Court in sentencing may consider any matter relevant to the sentence whether or not admissible under criminal trial rules and the District Court is given broad discretion as to whether it may consider such evidence as probative. Thus, the door is wide open in the sentencing procedure for the District Court to consider not only the aggravating circumstances listed in § 46-18-303 but additional factors which would have no direct bearing on the criminal responsibility of the defendant.
This case illustrates arbitrary findings by the District Court of circumstances other than those listed in § 46-18-303. Of the statutory *412 aggravating circumstances, the only one picked up by the court and used to justify the death sentence is that the offense was deliberate homicide and was committed by means of torture. The only mitigating circumstance found by the court was the defendant had no significant history of prior criminal activity. If § 46-18-305 is read properly, these are the only aggravating and mitigating circumstances which the court should have considered in sentencing the defendant. However, the District Court chose, apparently under the broad language of § 46-18-302 to add a number of aggravating factors, not statutory factors, including the following: that the defendant knew the victim was married and had a family (par. 13) (this is disputed by the defendant); that the defendant had no real employment history, and never held a job for any appreciable length of time, and at the age of 26 years had children by three different women, none of whom he supported (par. 19); and that the victim’s family had been deprived of a son, husband or brother and that the parents of the victim are now undergoing psychiatric counseling because of their son’s death (par. 20) None of these is listed as a statutory aggravating circumstance and only the District Court judge knows what influence these additional factors had in bringing about the sentence of death.
Thus, the Montana statutes on the subject permit arbitrary action by the District Court of the highest degree, since the result can be so drastic and irreversible.
Now, it is true that in Lockett v. Ohio (1976), 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973, the United States Supreme Court held that because the death penalty is so profoundly different from all other penalties, individualized decision-making is essential in capital cases. To that end, the Supreme Court endorsed in Lockett that at the sentencing hearing, evidence outside the trial record relating to the defendant’s character or the circumstances of the offense, but only as mitigating factors could be considered. The Court said:
“We are now faced with those questions and we conclude that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest capital case, not be precluded from considering, as a mitigating factor any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death . . .” (Emphasis in original.)
Lockett, 438 U.S. at 604, 98 S.Ct. at 2965.
Thus, the provisions of § 46-18-302, MCA, which open the door to *413 extraneous evidence having to do with the sentence has judicial blessing only as to mitigating factors. The use of extraneous evidence to find aggravating factors, over and above those statutorily provided or implicit in the crime itself, have no such blessing. One of the important reasons is that if such aggravating factors are to be considered in connection with the fixing of death as punishment, the defendant ought to be entitled to a trial by jury as to those factors, and that brings me to a further problem with respect to the Montana statutes.
In Adamson v. Ricketts (9th Cir. 1988), 865 F.2d 1011, the Circuit Court had before it a habeas action against the Arizona director of the Department of Corrections. The Federal District Court held, among other things, that Arizona’s statutory scheme for the imposition of the death penalty unconstitutionally limited the court’s consideration of mitigating circumstances and allowed an arbitrary imposition of the death penalty.
The Circuit Court held that the Arizona statutes (which are much like Montana’s) permitted elements of the offense to be determined by the sentencing judge, which deprived the defendant of the right to trial by jury as to all of the elements of the crime and thus violated the Sixth and Fourteenth Amendments. The Circuit Court also determined that the examination of death sentencing statutes required heightened scrutiny. It further held that there must be a strict separation between the determination of guilt and innocence (fact-finding) and the determination of an appropriate punishment (sentencing). The Adamson case is now on appeal to the United States Supreme Court.
In the case we are now considering, the District Court engaged in extensive fact-finding relating to the defendant’s guilt or innocence in imposing the death sentence. It found that the offense was deliberate homicide and was committed by means of torture; it found extraneous circumstances as are noted above. The greatest problem, however, is that the District Court in effect found that the defendant had committed the crime directly, although my interpretation of the charges against Lester Kills On Top and the verdicts found against him relate to accountability under the felony-murder rule. The District Court claimed that he was not convicted under the felony-murder rule.
The majority had accepted the finding of the District Court that defendant committed the crime directly, and beyond that, the majority now declare also, after a review of the record, that the defend *414 ant did kill Martin Etchemendy, Jr. The jury found otherwise when it returned a verdict of not guilty on the deliberate homicide charge. In so acting, the majority have misinterpreted Enmund v. Florida (1982), 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140, and Cabana v. Bullock (1986), 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704. Nothing in those cases gives a sentencing court, or an appellate court, the right to reverse a jury verdict to achieve a hanging or a lethal injection of the defendant. (See Cabana, 474 U.S. at 389 fn. 5, 106 S.Ct. at 698, fn. 5).
Attached to this dissent as an exhibit are the five counts of the amended information under which the defendant was charged, and the jury verdict with respect to each count. It will be seen that the defendant was found guilty under Count I of robbery in the course of committing, or aiding and abetting in the commission of, a theft from the victim while inflicting, or aiding and abetting bodily injury upon the victim. He was found not guilty under Count II of aggravated kidnaping for the purpose of facilitating the commission of the crime of robbery. He was found guilty in Count III of aggravated kidnaping with the purpose of inflicting bodily injury or terrorizing the victim. He was found not guilty under Count IV of deliberate homicide. He was found guilty under Count V of deliberate homicide in that he was engaged in the commission of or legally accountable for the commission of aggravated kidnaping, resulting in the death of the victim which was caused by the defendant or another person legally accountable for the crime of aggravated kidnaping.
It is clear to me that if the defendant here was not found guilty under the felony-murder rule on the basis of accountability, then the verdicts are inconsistent because the jury did not find him guilty of direct deliberate homicide or direct aggravated kidnaping. In fact, even his robbery conviction seems to be on the basis of accountability.
The whole tenure of the District Court’s findings with respect to the sentence of death is that the defendant committed the acts directly. No mention is made in the findings either of the felony-murder convictions or of accountability. Thus, the District Court has either ignored the jury verdict, and improperly sentenced the defendant for directly committing crimes for which he has not been convicted by the jury or the District Court has become the sole fact-finder in spite of the jury’s verdict. In either event, the defendant has been deprived of his right to a jury trial.
*415 Fifteen states do not provide a death penalty in capital cases. Of the 35 states that do so provide, only four allow the judge, and not the jury, to determine the aggravating factors and mitigating circumstances for the imposition of the death penalty. Here, the District Court found that the defendant had committed deliberate homicide and caused the death of the victim by torture. While it may be a question of semantics, it is nonetheless true that no jury determined that the victim died by torture. The jury did determine that his death was caused by the infliction of bodily injury and by terror.
Since the death penalty hinges in Montana on the statutory aggravating circumstances of § 46-18-303, MCA, those aggravating circumstances are an element of the crime, and the defendant is entitled to a jury trial as to those elements. In Montana, the right to a jury trial is by our Constitution, secured to all and shall “remain inviolate.” Art. II, § 26,1972 Mont. Const. The Sixth Amendment to the United States Constitution guarantees an impartial jury trial in criminal prosecutions. Montana statutes deprive a defendant in a capital case of a jury trial on the most critical elements that relate to his sentence.
In this case, therefore, I would uphold the conviction of the defendant for robbery, aggravated kidnaping, and deliberate homicide. I would remand the cause to the District Court for resentencing of the defendant but forbid the death penalty.
EXHIBIT TO THE DISSENT OF JUSTICE JOHN C. SHEEHY
The following are the charges against the defendant Lester Kills On Top, with the jury result as to each count:
AMENDED INFORMATION
COUNT I
The Defendant LESTER KILLS ON TOP, committed the offense of Robbery, a felony, as defined in § 45-5-401(1) (a) and § 45-2-302(3), MCA, in that on or about October 17, 1987, in Custer County, Montana and Campbell County, Wyoming, LESTER KILLS ON TOP did, in the course of committing or aiding and abetting in the commission of a theft from JOHN MARTIN ETCHEMENDY, JR., inflict, or aided and abetted in inflicting, bodily in *416 jury upon JOHN MARTIN ETCHEMENDY, JR., contrary to the form, force and effect of the statutes in such cases made and provided, and against the peace and dignity of the State of Montana. JURY VERDICT: Guilty
COUNT II
The Defendant LESTER KILLS ON TOP, committed the offense of Aggravated Kidnaping, a felony, as defined in § 45-5-303(l)(b) and § 45-2-302(3), MCA, in that on or about October 17, 1987, in Custer County, Montana and Campbell County, Wyoming, LESTER KILLS ON TOP did purposely or knowingly and without lawful authority restrain or aid and abet in restraining JOHN MARTIN ETCHEMENDY, JR. by holding or aiding and abetting in holding him in a place of isolation, or by using or aiding and abetting in the use of physical force against JOHN MARTIN ETCHEMENDY, JR. with the purpose of facilitating the commission of the crime of Robbery, a felony, or the flight thereafter, contrary to the form, force and effect of the statutes in such case made and provided, and against the peace and dignity of the State of Montana.
JURY VERDICT: Not guilty
COUNT III
(Alternative Count to Count II)
The Defendant, LESTER KILLS ON TOP, committed the offense of Aggravated Kidnaping, a felony, as defined in § 45-5-303(1)(c) and § 45-2-302(3), MCA, in that on or about October 17, 1987, in Custer County, Montana and Campbell County, Wyoming, LESTER KILLS ON TOP did purposely or knowingly and without lawful authority restrain or aid and abet in restraining JOHN MARTIN ETCHEMENDY, JR. by holding or aiding and abetting in holding him in a place of isolation or by using or aiding and abetting in the use of physical force against JOHN MARTIN ETCHEMENDY, JR. with the purpose of inflicting bodily injury on or terrorizing JOHN MARTIN ETCHEMENDY, JR., contrary to the form, force and effect of the statutes in such case made and provided, and against the peace and dignity of the State of Montana.
JURY VERDICT: Guilty
*417 COUNT IV
The Defendant, LESTER KILLS ON TOP, committed the offense of Deliberate Homicide, a felony, as defined in § 45-5-102(1)(b), MCA, in that on or about October 17, 1987, in Custer County, Montana and Campbell County, Wyoming, while LESTER KILLS ON TOP was purposely or knowingly engaged in the commission of or legally accountable for the commission of Robbery, or flight after the commission of the crime of Robbery, a felony, which involved the use of physical force and violence against JOHN ETCHEMENDY, JR., the death of JOHN MARTIN ETCHEMENDY, JR. was caused by LESTER KILLS ON TOP or another person legally accountable for the crime of Robbery, contrary to the form, force and effect of the statutes in such case made and provided, and against the peace and dignity of the State of Montana.
JURY VERDICT: Not Guilty
COUNT V
(Alternative Count to Count IV)
The Defendant, LESTER KILLS ON TOP, committed the offense of Deliberate Homicide, a felony, as defined in § 45-5-102(1)(b), MCA, in that on or about October 17, 1987, in Custer County, Montana and Campbell County, Wyoming, while LESTER KILLS ON TOP was purposely or knowingly engaged in the commission of or legally accountable for the commission of Aggravated Kidnaping, or flight after the commission of the crime of Aggravated Kidnaping, or flight after the commission of the crime of Aggravated Kidnaping, a felony, which involved the use of physical force and violence against JOHN MARTIN ETCHEMENDY, JR., the death of JOHN MARTIN ETCHEMENDY, JR. was caused by LESTER KILLS ON TOP or another person legally accountable for the crime of Aggravated Kidnaping contrary to the form, force and effect of the statutes in such case made and provided, and against the peace and dignity of the State of Montana.
JURY VERDICT: Guilty