437 So.2d 1082 (1983)
Roy Allen HARICH, Appellant,
v.
STATE of Florida, Appellee.
No. 62366.
Supreme Court of Florida.
August 25, 1983.
Rehearing Denied October 12, 1983.
*1083 James B. Gibson, Public Defender, and Christopher S. Quarles, Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant.
Jim Smith, Atty. Gen. and Shawn L. Briese, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
The appellant, Roy Allen Harich, was convicted of first-degree murder, attempted first-degree murder, use of a firearm in the commission of a felony, and two counts of kidnapping. The trial judge imposed the death sentence in accordance with the jury's advisory sentence recommendation for the first-degree murder conviction. The trial judge also sentenced appellant to a term of thirty years for attempted first-degree murder, fifteen years for the use of a firearm in the commission of a felony, and thirty years for each of the two kidnapping charges. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the convictions, the imposition of the death sentence, and the sentences for the other offenses.
This cause concerns the brutal murder of one teenage girl, Carlene Kelley, and the attempted murder of a second teenage girl, Deborah Miller. Deborah, the surviving victim, testified at trial and stated that she and Carlene met the 22-year-old appellant at a filling station in Daytona Beach. The girls were in the process of walking to the pier when they stopped at the filling station, and they accepted appellant's offer of a ride to their destination. Rather than going to the beach, however, Deborah stated that the group drove around town in appellant's van and smoked a pipe of marijuana belonging to the girls. They later decided to go to the woods where appellant was growing several marijuana plants to obtain some more marijuana. On the way, they stopped at a convenience store and purchased a six-pack of beer. When they arrived at appellant's marijuana patch, they found that the marijuana leaves were damp so they placed the leaves on the van's engine cover to dry. They waited and talked for about an hour while trying to dry the *1084 leaves. Deborah then asked if they could leave, and they got into the van and departed.
Deborah testified that appellant drove only a few yards down the deserted road before he stopped the van, held a gun on the girls, and ordered them to undress. He forced Carlene Kelley to perform fellatio on him. Deborah further testified that, though she did not actually see the act, she heard sounds which indicated that appellant also had sexual intercourse with Carlene. Appellant then told the girls to get dressed, which they did. As they started to walk away, appellant said that it was a long walk through the woods and that he would give them a ride, promising not to do anything more to them. The girls acquiesced and got back into the van.
Appellant drove them about a quarter of a mile before Carlene said she needed to use the bathroom. Appellant stopped the van and told Deborah and Carlene that they could walk the short distance to the road, but they should lie down behind the van while he drove away. They complied with this direction and lay down on their stomachs. Deborah stated that Carlene began to cry and beg appellant not to shoot her. Deborah looked up and saw that appellant had wrapped a towel around the barrel of his gun. Appellant told Carlene he would not shoot her if she was quiet, but immediately shot her in the back of the head. He also shot Deborah in the back of the head. Deborah further testified that Carlene was still alive after the shooting and that both she and Carlene were crying softly when she saw the appellant return carrying a knife. Deborah described how he stood behind her, lifted her head by her chin, and began cutting her neck with the knife; she tried to protect herself with her hands. Appellant left Deborah and cut Carlene's throat, severing her spinal cord and causing instantaneous death.
Deborah did not lose consciousness, and after concluding that Carlene was dead, she crawled and dragged herself out of the woods onto the side of the highway where she was found by a passing motorist. Medical testimony reflected that Deborah had a bullet wound in the back of her head and a severe laceration that extended across her neck, all the way through the neck in the posterior area, almost to the backbone, and all the way through the musculature in the anterior of the neck, down to the midline where the windpipe was severed. The emergency room doctor observed that, when Deborah arrived at the hospital, she was literally holding her head on with her hands. He testified that, in his opinion, it was almost unbelievable that Deborah could sustain this severe an injury and survive. At the hospital, Deborah was able to tell the police that her attacker was named Roy, and she provided a physical description of both the man and his van. She was the primary witness for the state and was able to identify appellant at trial.
Appellant testified in his own behalf, stating that he had consumed a substantial amount of beer and smoked marijuana that evening. He admitted picking up the girls at the filling station and driving them to a deserted area in the woods to pick marijuana. He testified that they waited in the woods for more than an hour while trying to dry the marijuana leaves, and that, when Deborah Miller asked if they could leave, they got into the van and departed. Appellant denied the sexual battery of Carlene Kelley, her murder, and the attempted murder of Deborah Miller. He stated that he drove the girls out of the woods and dropped them off at a nearby convenience store so they could call a friend for a ride home.
The jury found appellant guilty of the first-degree murder of Carlene Kelley; the attempted first-degree murder of Deborah Miller; the use of a firearm in the commission of a felony; and two counts of kidnapping.
In the penalty phase, appellant presented a clinical psychologist who testified that, though appellant was competent at the time of the offense, he was operating at that time under the influence of extreme mental or emotional disturbance because of his consumption of substantial amounts of *1085 drugs and alcohol. Appellant called character witnesses who testified that appellant worked very effectively as a volunteer fireman and that he had been a model prisoner while confined in jail before his trial.
The state presented as evidence in the penalty phase the testimony of two law enforcement officers, Sergeants Vail and Burnsed, concerning statements appellant had made during interrogation; these statements had been suppressed during the guilt phase of the trial. The trial judge decided to admit these statements into evidence under the more liberal evidentiary standard of the penalty phase established in section 921.141(1), Florida Statutes (1981). At the conclusion of the penalty phase, the jury voted nine-to-three to recommend imposition of the death penalty.
The trial judge agreed with the jury and imposed the death penalty, finding as aggravating circumstances (1) that appellant murdered Carlene Kelley while he was committing or attempting to commit the crimes of sexual battery and kidnapping; (2) that he killed Carlene Kelley for the purpose of avoiding and preventing his lawful arrest; (3) that the killing of Carlene Kelley was especially heinous, atrocious, and cruel; and (4) that the capital felony was committed in a cold, calculated, and premeditated manner, without any pretense of moral or legal justification. The trial court found one mitigating circumstance, specifically, that appellant had no significant prior history of criminal activity.
Regarding the guilt phase of the trial, appellant asserts (1) that the evidence was insufficient as a matter of law to establish premeditation; (2) that the trial court committed reversible error in allowing testimony of five rebuttal witnesses over defense objection; and (3) that the prosecutor improperly commented on defense trial tactics in his final argument. We find the testimony of Deborah Miller clearly establishes premeditation, that there was no error in admitting the rebuttal testimony, and that the argument of the prosecutor, although possibly bordering on the improper, was not prejudicial, nor did it constitute reversible error. We affirm all of appellant's convictions.
With regard to the sentencing phase of the trial, appellant contends (1) that the trial judge improperly allowed the state to present evidence of appellant's statements which had previously been suppressed by the trial judge; (2) that the prosecutor engaged in improper argument during the penalty phase; (3) that the standard jury instruction used in the penalty phase is improperly worded to require seven votes to recommend the imposition of a life sentence; (4) that the trial judge erred in applying the four aggravating factors to this murder; (5) that it was reversible error for the trial judge to refuse to order a presentence investigation report; and (6) that our capital sentencing statute is unconstitutional.
In regard to appellant's first contention, we find no reversible error. The trial judge, in allowing certain previously-suppressed statements of appellant to be introduced during the penalty phase through the testimony of Sergeants Vail and Burnsed, acted under the authority of section 921.141(1). This section provides in part that, during the penalty phase,
evidence may be presented as to any matter that the court deems relevant to the nature of the crime and the character of the defendant and shall include matters relating to any of the aggravating or mitigating circumstances... . Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements. However, this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the Constitution of the State of Florida.

(Emphasis added.) It is clear that whenever evidence is suppressed because it was secured in violation of the fourth or fifth amendment, this statute prohibits its introduction during the penalty phase unless *1086 there is an appropriate exception as in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). We find that the court erred by admitting these statements into evidence after previously suppressing them, but we also find that the admission was not reversible error because substantially all of the information contained in those statements had already been presented to the jury in testimony relating to unsuppressed statements of appellant and in appellant's own testimony.
The only new information contained in the state's penalty-phase testimony was appellant's statement that he had thrown his gun into the canal. Given all the other testimony and evidence in this cause, including the graphic testimony of the surviving victim, this one additional item concerning the gun was not critical or substantial and did not prejudice appellant in the sentencing phase. In considering the argument that this information was prejudicial to appellant, it should be remembered that the jury in the penalty phase was the same jury that found appellant guilty of murder and rejected appellant's testimony that he left the two girls alive at the convenience store.
The second point that merits discussion concerns the assertion by appellant that the instruction in the penalty phase deprived him of the life recommendation benefit in a tie vote situation. The trial judge in this instance instructed the jury in accordance with the Florida Standard Jury Instructions (Criminal) Penalty Proceedings-Capital Cases, F.S. 921.141 (rev. June, 1981):
If a majority of the jury determine that the defendant should be sentenced to death, your advisory sentence will be:
A majority of the jury by a vote of ______ advise and recommend to the court that it impose the death penalty upon the defendant.
On the other hand, if by six or more votes the jury determines that the defendant should not be sentenced to death, your advisory sentence will be:
The jury advises and recommends to the court that it impose a sentence of life imprisonment upon the defendant without possibility of parole for twenty-five years.
You will now retire to consider your recommendation. When seven or more of you are in agreement as to what sentence should be recommended to the court, that form of recommendation should be signed by your foreman and returned to the court.
We recognize that the concluding sentence of the last paragraph of the instruction is inconsistent with the directions contained in the body of the instruction. The concluding sentence should read:
When seven or more of you are in agreement to recommend the imposition of the death sentence or when six or more of you are in agreement to recommend life imprisonment without the possibility of parole for twenty-five years, then the appropriate form of recommendation should be signed by your foreman and returned to the court.
The body of the instruction is correct, and in this case there was neither an objection nor a suggested modification of the last sentence of the instruction by appellant's counsel. The jury returned a death recommendation by a nine-to-three vote, and there is nothing in this record to show that the jury was confused by the instruction. In view of the jury's vote, we find no prejudice.
We have fully considered appellant's contentions that the prosecutor's argument was improper, that the aggravating factors should not have been applied, that the trial judge should have ordered a presentence investigation report, and that our death penalty statute was unconstitutionally applied in this case. We find that these arguments have no merit and that they do not require discussion.
For the reasons expressed, we affirm appellant's conviction for each of the offenses and expressly find that the death penalty is an appropriate punishment in this case.
It is so ordered.
*1087 ALDERMAN, C.J., and ADKINS, BOYD, OVERTON, EHRLICH and SHAW, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion.
McDONALD, Justice, concurring in part and dissenting in part.
This appellant was properly convicted. I disagree, however, on the imposition of the death penalty.
I believe an improper aggravating circumstance was found in that the evidence is insufficient to prove beyond a reasonable doubt that Harich killed for the purpose of avoiding and preventing lawful arrest. The trial judge correctly found that Harich had no significant history of prior criminal activity. The testimony of the psychologist who testified that when Harich committed his crimes he was under the influence of extreme mental or emotional disturbance and that his capacity to appreciate the criminality of his conduct or to confirm his conduct to the requirements of law was substantially impaired, was not contradicted or substantially impeached. I feel that Harich should have been given the benefit of these mitigating circumstances. The appellant also presented nonstatutory mitigating evidence. The trial judge made no reference to this; hence, I cannot tell whether he found this evidence to have no probative value, felt it to have no weight, or simply ignored it.
The acts of this appellant were indeed egregious. Nevertheless, when considering the fact that he had no criminal record, had a temporary mental or emotional disturbance, temporarily lacked the capacity to conform to the requirements of law (even though legally sane) and was a person who was not only regularly employed but was a voluntary fire fighter, the death penalty is disproportionate to his circumstances. I would vacate his sentence of death with instructions to impose a life sentence.