**John Earl BUSH, Petitioner–Appellant,**

v.

**Harry K. SINGLETARY, Secretary, Florida Department of Corrections, Respondent–Appellee.**

No. 89–4051.

United States Court of Appeals, Eleventh Circuit.

March 30, 1993.

Billy H. Nolas, Julie D. Naylor, Ocala, FL, for petitioner-appellant.

Celia A. Terenzio, Asst. Atty. Gen., Dept. of Legal Affairs, West Palm Beach, FL, for respondent-appellee.

Before KRAVITCH, EDMONDSON, and COX, Circuit Judges.

PER CURIAM:

John Earl Bush, a Florida inmate, was convicted of first-degree murder and sentenced to death. He filed a 28 U.S.C. § 2254 petition challenging both his conviction and his sentence. The district court denied relief, and Bush appeals. We affirm.

## FACTS

On April 27, 1982, John Earl Bush and three other men abducted Frances Slater from the convenience store where she worked. Her body was found later that day, thirteen miles away. She had been stabbed in the abdomen and shot once in the back of her head at close range. The convenience store's cash register and floor safe had been robbed of approximately $134.00. Bush was tried for the crimes in 1982 and convicted, following a jury trial, of first degree murder, armed robbery and kidnapping.

Four pretrial taped statements made by Bush to law enforcement authorities were introduced at trial. The Supreme Court of Florida described these statements as "the only known version of the events [which] are presented by Bush in the light most favorable to him." *Bush v. State,* 461 So.2d 936, 937 (Fla.1984). In the first statement, Bush denied any involvement with the Slater abduction but said that on the night in question he had given a ride to

three men whom he did not know. He also claimed he had an alibi. When officers took Bush to West Palm Beach to verify his alibi, Bush recanted his first statement and made a second statement. In this statement he said that he, Pig Parker, Alfonso Cave, and Terry Johnson had gone to Fort Pierce with the intention of committing a robbery and that the four had abducted, robbed, and murdered Miss Slater. He denied stabbing or shooting the victim, denied knowing whose idea it was to kill her, and denied seeing anyone with a knife. After Bush and the officers returned from West Palm Beach, he made a third statement. In this statement he admitted driving the getaway vehicle. He also admitted owning the gun used to shoot the victim, and he admitted disposing of it the day after the murder.

Bush made a fourth statement, against the advice of his attorney, in which he said that he is the one who stabbed Frances Slater but that he had "faked" it in an effort to get his cohorts to leave her alone. He said that an accomplice, Parker, shot her. The medical examiner testified that the stab wound was superficial and did not involve Ms. Slater's vital organs. The examiner's opinion was that a gunshot wound to the head was the cause of death.

Following a separate sentencing hearing, the jury recommended the death penalty by a vote of seven to five. The trial judge, citing three aggravating factors and no mitigating factors, sentenced Bush to death.

## PROCEDURAL HISTORY

Bush appealed his conviction and sentence to the Supreme Court of Florida. In November 1984, the Supreme Court of Florida affirmed his conviction and his sentence. *Bush,* 461 So.2d at 942. His petition for a writ of certiorari was denied. *Bush v. Florida,* 475 U.S. 1031, 106 S.Ct. 1237, 89 L.Ed.2d 345 (1986).

Bush's first death warrant was signed in March 1986, after which he filed a motion to vacate his conviction and sentence pursuant to Florida Rule of Criminal Procedure 3.850. Following the denial of his motion, he filed a petition for writ of habeas corpus in the Supreme Court of Florida. That court stayed his execution to consider both his petition and his appeal of the denial of his 3.850 motion. In February 1987, the Supreme Court of Florida denied the requested relief. *Bush v. Wainwright,* 505 So.2d 409 (Fla.1987). The Florida Supreme Court denied rehearing in May 1987. *Id.* In October 1987, the Supreme Court of the United States denied certiorari. *Bush v. Florida,* 484 U.S. 873, 108 S.Ct. 209, 98 L.Ed.2d 160 (1987).

On January 8, 1988, Bush's second death warrant was signed. In February 1988, two days before his scheduled execution, Bush filed this 28 U.S.C. § 2254 petition in the district court. His petition asserts seventeen claims.[1] After an evidentiary hear-

---

1. These claims were described by the district court as follows:

Claim 1: The petitioner was deprived of effective assistance of counsel at the guilt-innocence phase of his capital trial in violation of the Sixth, Eighth and Fourteenth Amendments.

Claim 2: The petitioner was deprived of the effective assistance of counsel at the sentencing phase of his capital trial in violation of the Sixth, Eighth and Fourteenth Amendments.

Claim 3: The petitioner was denied due process and equal protection under the Fifth, Sixth, Eighth, and Fourteenth Amendments because he was incompetent to stand trial.

Claim 4: The petitioner was deprived of his rights to due process and equal protection under the Fourteenth Amendment, as well as his rights under *Ake v. Oklahoma* and the Fifth, Sixth and Eighth Amendments, when the defense psychologist appointed to evaluate him before trial failed to conduct a competent and appropriate evaluation.

Claim 5: The petitioner's sentence of death constitutes cruel and unusual punishment in violation of the Eighth Amendment because the state court record is devoid of a finding of his individual culpability.

Claim 6: The petitioner's capital trial and sentencing proceedings were rendered fundamentally unfair and unreliable and violated the Fifth, Sixth, Eighth and Fourteenth Amendments due to the prosecution's deliberate and knowing presentation and use of false evidence and argument and intentional deception of the jury, the court, and defense counsel.

Claim 7: The petitioner was denied due process and equal protection in violation of the Fifth and Fourteenth Amendments because

ing on the adequacy of counsel issues, the district court denied relief on all claims.

The district court issued a certificate of probable cause to appeal, and we subsequently held proceedings in this court in abeyance to allow Bush to pursue state habeas proceedings in the Florida Supreme Court. The Supreme Court of Florida, however, denied relief. *Bush v. Dugger*, 579 So.2d 725 (Fla.1991).

## ISSUES ON APPEAL

Bush argues on this appeal that the district court erred in denying relief on four claims. His brief articulates the issues as following:

(1) Whether Mr. Bush's sentence of death constitutes cruel and unusual punishment because the state courts did not make a finding on his individual culpability sufficient to satisfy the Eighth Amendment.

(2) Whether the prosecutor's inaccurate, inconsistent, and misleading presentation violated the Eighth and Fourteenth Amendments.

(3) Whether the state's comments and the trial court's instructions that a verdict [recommending] life imprisonment had to be rendered by a majority of the jury misled the jury as to its role at sentencing and created the risk that death may have been imposed because of inappropriate factors, in violation of the Eighth and Fourteenth Amendments.

(4) Whether Mr. Bush received ineffective assistance of counsel at the sentencing phase of his capital trial.

Brief for Appellant at 1.

We will address each issue in turn.

## DISCUSSION

**1. Whether Bush's sentence of death constitutes cruel and unusual punishment because the state courts did not make a finding of his individual culpability sufficient to satisfy the Eighth Amendment.**

▪ Bush argues that the death sentence is unwarranted in this case because the state courts did not make a finding that he was responsible for the murder of Ms. Slater. Principles of proportionality embodied in the Eighth Amendment prohibit the imposition of the death penalty upon persons who, though guilty of capital mur-

---

the Florida Supreme Court refused to review certain of his claims the court found procedurally barred.

Claim 8: The petitioner was denied his right to an individualized and fundamentally fair and reliable capital sentencing determination because the State intentionally relied upon victim impact, comparable worth, and other improper factors in its efforts to obtain a sentence of death.

Claim 9: The petitioner was deprived of Eighth and Fourteenth Amendment rights by prosecutorial comments and judicial instructions which diminished the jurors' sense of responsibility during the sentencing phase of his trial.

Claim 10: Petitioner's statements to law enforcement personnel were obtained in violation of *Miranda v. Arizona* and the Fifth, Sixth, Eighth, and Fourteenth Amendments.

Claim 11: The petitioner was deprived of Eighth and Fourteenth Amendment rights by judicial instruction which may have misled the jury into thinking that it had to reach a majority recommendation regarding sentencing.

Claim 12: The prosecution's violation of state discovery rules violated petitioner's due process rights, his right to a fair trial, and his right to confront and cross-examine witnesses against him, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments.

Claim 13: The petitioner was deprived of his rights under the Sixth, Eighth, and Fourteenth Amendments by the prosecutor's use of hypnotically induced testimony at trial.

Claim 14: Petitioner's Eighth Amendment rights to a reliable sentencing determination were violated by the improper introduction of inflammatory and prejudicial photographs at his capital trial.

Claim 15: Bush was deprived of his Sixth Amendment rights by the prosecutor's introduction into evidence the results of a post-arraignment line-up conducted before Bush had been appointed counsel, and his appellate counsel was ineffective in not raising this issue on appeal.

Claim 16: The petitioner's Eighth Amendment rights were violated by the sentencing court's refusal to find the mitigating circumstances clearly set out in the record.

Claim 17: Bush was deprived of rights under the Fifth, Sixth, Eighth and Fourteenth Amendments by prosecutorial and judicial "burden-shifting" during the sentencing phase of his trial.

der under state law, did not themselves kill, attempt to kill, or intend to kill. *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). In *Tison v. Arizona,* 481 U.S. 137, 158, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987), the Court held that major participation in the felony committed, combined with a reckless indifference to human life, was sufficient to satisfy *Enmund*'s culpability requirement.

■ Any appropriate tribunal may make the finding of culpability required by *Enmund. Cabana v. Bullock,* 474 U.S. 376, 392, 106 S.Ct. 689, 700, 88 L.Ed.2d 704 (1986). Thus a finding by the jury, trial judge, or appellate court may satisfy *Enmund. Id.* The state court findings of fact, both trial and appellate, are entitled to a presumption of correctness, under 28 U.S.C. § 2254(d). *Sumner v. Mata,* 449 U.S. 539, 546, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981), *Lusk v. Dugger,* 890 F.2d 332, 336 (11th Cir.1989), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 805 (1990).

■ Bush argues that the state court findings in his case do not satisfy the requirements of *Enmund* and its progeny. More specifically, Bush argues that there is no finding of fact on Bush's mental state at the time in question. He also contends that any such finding would contradict the facts that the Florida Supreme Court found to be disclosed by the "only known version of the events." Brief for Appellant at 29–30 (quoting *Bush,* 461 So.2d at 937 (the Supreme Court of Florida's affirmance of Bush's conviction)). The State argues that both the trial court and the appellate court made a sufficient culpability finding.

The case was submitted to the jury on theories that included felony murder. The jury's guilty verdict, therefore, does not answer the culpability question in this case. The trial judge's sentencing findings include the following:

Of course, the only version of the actions that took place that night that we have come from your statements both out of court and in court. I guess we don't have to believe your statement, but since there is no other evidence we can't act upon anything that wasn't in evidence. So we must assume that you were an accomplice in the offense and we must assume, that from the evidence of Dr. Wright, that the actual death occurred as a result of the bullet wound and the only evidence, direct evidence that we have is that another person imposed that. But the third part here is, and the Defendant's participation was relatively minor. The evidence that was presented in this case is that you were together with these other people during this entire evening, that it was your car, that you were doing all the driving and that it was your weapon. The evidence then shows that when you stopped down in that road you and Parker got out of the car and took the girl back and between the two of you you did her in.

You took the first step by stabbing her. You said you did not intend to kill her. Apparently the jury disbelieved that and *I am privileged to disbelieve it as well. In any event, what you did, stabbing her, making her fall to the ground, facilitated and cooperated with Parker in what he did next, and therefore in my opinion there is no way to say what you did was relatively minor.*

R.8 at 1304–1305, Sentencing Transcript (emphasis added).

On direct appeal Bush argued that under *Enmund,* the trial judge should have instructed the jury during the sentencing phase that a sentence of death may not be imposed in the absence of intent to kill or contemplation that life would be taken. The Florida Supreme Court rejected this argument, saying:

We disagree with this contention on the facts of this case. Here, we do not have a mere passive aider and abettor as in *Enmund,* where the only participation by Enmund was as driver of the getaway car from what he supposed was only a robbery and not a murder. The facts of this case show that Bush was a major, active participant in the convenience store robbery and his direct actions contributed to the death of the victim. The degree of Bush's participation is suffi-

cient to support a finding that his involvement constituted the intent or contemplation required by *Enmund.*

461 So.2d at 941.

We hold that the trial judge's finding satisfies the requirement imposed by *Enmund* and its progeny.

Bush's argument that the Florida Supreme Court's statement that Bush's statements "constitute the only known version of the events" would contradict a finding that Bush intended to kill the victim is meritless. The Supreme Court simply summarized Bush's fourth statement as presented by Bush "in the light most favorable to him." *Id.* at 937. The suggestion that the Florida Supreme Court was finding as a fact that Bush's fourth statement represented the truth about the events in question and that the court's description of Bush's statements, therefore, constituted a finding by that court that Bush did not have the requisite intent is untenable.

**2. Whether the prosecutor's inaccurate, inconsistent, and misleading presentation violated the petitioner's rights under the Eighth and Fourteenth Amendments.**

 Bush contends that the prosecutor asserted that Bush was the triggerman and ringleader; that the same prosecutor asserted in Parker's trial that Parker was the triggerman and ringleader; and that the same prosecutor asserted in Cave's trial that Cave was the triggerman and ringleader. Moreover, Bush contends the prosecutor presented misleading evidence during Bush's trial to support the theory that Bush was the triggerman, even though the prosecutor knew that theory was false. This inaccurate, misleading, and inconsistent presentation, Bush contends, was fundamentally unfair, violated due process, and rendered unreliable the death sentence imposed.

The State responds that Bush focuses on an isolated comment by the prosecutor; that the State did not present any evidence or argument to suggest that Bush was the triggerman but, on the contrary, relied on the felony-murder theory to convict Bush.

The State denies presenting any misleading evidence.

The Supreme Court has said that improper argument by a state prosecutor can make a trial so fundamentally unfair as to deny a defendant due process. *Donnelly v. De Christoforo,* 416 U.S. 637, 646, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974). In this instance, however, the arguments made by the prosecution did not deprive Bush of his due process rights.

The State's evidence at trial and the prosecutor's arguments were predicated on two theories of first degree murder: felony murder and aiding and abetting premeditated murder. One statement by the prosecutor suggested that Bush was the triggerman, but this isolated suggestion was inconsistent with the prosecutor's overall presentation and argument. The prosecutor correctly told the jury that the State did not have to prove that Bush touched or stabbed the victim to sustain a first degree murder conviction. R.6 at 988–89, Trial Transcript. It is absolutely clear, therefore, as the district court found, that this single comment by the prosecutor could not have affected the judgment of the jury.

The evidence presented by the State that Bush argues was misleading relates to the caliber of the murder weapon. Bush argues that the evidence regarding the bullet found in the victim's body is not consistent with the evidence regarding the caliber of Bush's gun. He contends that an unfired, .38 caliber round was found in his car, but that the fragment found in the victim's body was part of a .32 caliber bullet. Bush argues that the State presented the theory connecting the unfired round found in Bush's car to the bullet found in the victim's body while knowing it to be inaccurate.

The petitioner must prove that misleading evidence was presented and that it was material in obtaining his conviction. *Donnelly,* 416 U.S. at 647, 94 S.Ct. at 1873; *Tejada v. Dugger,* 941 F.2d 1551, 1556 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992).

A ballistics expert at trial testified that the bullet that killed the victim could have

been fired from either a .32 or .38 caliber weapon. R.3 at 472, Trial Transcript. Thus, it is not clear how the State's presentation of evidence connecting Bush's gun to the bullet that killed Ms. Slater could be misleading. Further, Bush admitted owning the murder weapon—whatever its caliber—and therefore evidence relative to its caliber was not material to his conviction.

Bush has not demonstrated that the prosecutor's presentation violated Bush's rights under the Eighth and Fourteenth Amendments.

**3. Whether the jury was misled by the State's comments and the trial court's instructions that a majority of the jury would have to recommend the sentence of life imprisonment to impose a sentence of life imprisonment.**

■ Under Florida's capital sentencing scheme, a jury's recommendation that the death penalty be imposed need not be unanimous, but may be by a simple majority. Fla.Stat. § 921.141(3) (West 1985). If a majority does not vote for death, the jury's recommendation is life; therefore, if the jury's vote is six to six, the recommendation is one for life.

■ Bush argues that the prosecutor's comments and the trial court's instructions misled the jury by suggesting that a majority vote was required to recommend a life sentence. These statements, Bush argues, violated the Eighth and Fourteenth Amendments by creating the risk that death may have been imposed because of inappropriate factors. The State argues that the judge properly instructed the jury and that nothing in the record demonstrates that the jury was confused.

Portions of both the prosecutor's comments during voir dire and the trial court's instructions suggest that a vote of seven was required for any recommendation. On one occasion, however, the trial court explained with clarity:

Now, if the majority of the jury determines that John Earl Bush should be sentenced to death, your advisory sentence will be 'a majority of the jury by a vote of blank advises and recommends to the court that it impose the death penalty

upon John Earl Bush.' One [sic] the other hand, if by *six or more votes* the jury determines that John Earl Bush should not be sentenced to death, your advisory sentence will be 'the jury advises and recommends to the court that it impose a [life sentence].'

R.8 at 1290, Sentencing Transcript (emphasis added). Absent some evidence to suggest that petitioner's jury was confused or divided six to six, petitioner cannot prevail on his claim that the instructions improperly misled the jury to believe a majority vote was required to impose a life sentence. *Adams v. Wainwright,* 764 F.2d 1356, 1369 (11th Cir.1985), *cert. denied,* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986); *Henry v. Wainwright,* 743 F.2d 761, 763 (11th Cir.1984). The district court properly denied relief on this claim.

**4. Whether petitioner received ineffective assistance of counsel at the sentencing phase of his capital trial.**

■ A determination concerning the adequacy of counsel is a mixed question of law and fact; thus, the district court's conclusion regarding adequacy is subject to plenary review. *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984); *Cunningham v. Zant,* 928 F.2d 1006, 1016 (11th Cir.1991). The district court held an evidentiary hearing on this issue; therefore, this court will accept the district court's findings of fact as correct unless they are shown to be clearly erroneous. Fed.R.Civ.P. 52(a); R. Governing § 2254 Cases in the United States Dist.Cts. 11; *see Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070.

Bush contends that the performance of Muschott, his counsel, was deficient. Particularly, Bush alleges that Muschott's performance in the sentencing phase was deficient in the following respects:

(a) counsel failed to investigate and present evidence detailing Bush's sympathetic background, including his disadvantaged childhood and his traumatic prison experience,

(b) counsel failed to investigate and present evidence of Bush's intellectual and psychological impairments,

(c) counsel failed to investigate and present evidence to show that Bush did not kill or intend to kill,

(d) counsel failed to investigate and present evidence to show that Bush's participation in the crime was the result of physical and psychological coercion, and

(e) counsel failed to investigate and present evidence to show that Bush was intoxicated at the time of the offense.

District Court Opinion at 32.

To prove that counsel was constitutionally ineffective, the petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. In evaluating petitioner's claims on the deficiency issue, we will consider whether counsel acted outside the wide range of reasonable professional judgment. *Id.* at 690, 104 S.Ct. at 2066. On the prejudice issue, the petitioner must show that, but for counsel's unprofessional errors, there is a reasonable probability that the sentencer would have weighed the balance of aggravating and mitigating factors to find that the circumstances did not warrant the death penalty. *Id.* at 694, 104 S.Ct. at 2068. First, we address the allegations of counsel's deficiency. We then address the prejudice issue by considering the evidence Bush claims should have been introduced and the likely impact of that evidence on the sentencers' determinations.

### A. Deficiency

The district court held an evidentiary hearing on the issue of effectiveness of counsel and made extensive findings of fact regarding Muschott's strategy. The district court described Muschott's dilemmas and his strategy to overcome them as follows:

Faced with Bush's prior admissions, and with Muschott's own conclusions [that Bush was very aggressive and cold and appeared unremorseful and] that Bush was competent and that he had assumed a leadership role in the Slater murder as well as in the 1974 rape of the nineteen year old, Muschott decided that his best defense (and his best chance of avoiding the death penalty for his client) was to argue that Mr. Bush never had any intention of killing Frances Slater, that he wanted no part in her death and that, in fact, he had schemed against his codefendants to spare her life.

District Court Opinion at 14 (citations omitted). There was evidence supporting this theory. In Bush's fourth taped statement, he confessed to stabbing Slater but stated that he sought to feign her death so that the others would leave her alone. The theory was also supported by Bush's claims that Pig Parker had attempted to force Bush to take the gun and to shoot Slater, but that Bush refused. In addition, the examining physician testified that the stab wound was superficial and not fatal. Muschott emphasized these aspects of the evidence during the guilt/innocence phase of the trial, along with the voluntariness of Bush's confessions and assistance to the investigating officers. After considering the evidence, however, the jury convicted Bush.

The district court described Muschott's reasons for not presenting evidence in mitigation during the sentencing phase of the trial as follows:

Mr. Muschott chose [not to present] what he had regarding Bush's family background, prison experience, and possible intoxication or mental disability. He made his decision for three reasons: (1) there was no mental disability to exploit and any attempt to create one would only have damaged his credibility with the jury; (2) Bush had confessed that he knew what he was doing on the night of the murder and any post-trial attempt to show intoxication would, likewise, have damaged his credibility; and (3) any evidence offered in an attempt to paint Bush as a docile, sympathetic and "sheeplike" follower would have been false, as well as unsuccessful, and would have invited the prosecutors to offer de-

tails of the prior rape,[2] robbery and kidnapping in rebuttal.

*Id.* at 15.

Muschott decided, instead, to ask the jurors, at sentencing, to take with them to the jury room the recording of Bush's third statement. This statement was the only one, in Muschott's opinion, in which Bush appeared remorseful. He hoped that by leaving the jury with a sympathetic presentation of Bush and by not inciting the prosecution to present the details of the 1974 rape, he could avoid the death penalty for his client. He was concerned that Bush might appear cold or unremorseful and might be led by the prosecutor to testify to his own detriment, so Muschott discussed the situation with Bush, Bush's father, and Bush's brother. Bush decided not to testify at sentencing.

Against Muschott's advice, however, during the sentencing hearing, Bush decided to take the stand. After a brief direct examination by Muschott, Bush argued with the prosecution on cross-examination, repeatedly challenged the prosecutor to prove the case against him, and could not remember what, if anything, the victim had said before she died. R.7 at 1187–1267, Sentencing Transcript (cross-examination of Bush).

 Bush now contends that his counsel was ineffective because he failed to investigate and present mitigating evidence at sentencing. Counsel must investigate defendant's background before sentencing. *Thompson v. Wainwright,* 787 F.2d 1447, 1450 (11th Cir.1986), *cert. denied,* 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987). The adequacy of the scope of an attorney's investigation is to be judged by the standard of reasonableness. *Mitchell v. Kemp,* 762 F.2d 886, 888 (11th Cir.1985), *cert. denied,* 483 U.S. 1026, 107 S.Ct. 3248, 97 L.Ed.2d 774 (1987). After an adequate investigation, counsel may reasonably decide not to present mitigating character evidence at sentencing. *Stanley v. Zant,* 697 F.2d 955, 961–62 (11th Cir.1983), *cert. de-*

*nied,* 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984).

 Bush first contends that Muschott should have presented evidence detailing Bush's sympathetic background, including his disadvantaged childhood and his prison experience. The district court found that Muschott investigated Bush's personal background and evaluated the usefulness of the character and background information. Muschott decided that this evidence was not significantly beneficial to his client's case and chose not to use it because of his belief that the State would have introduced, in rebuttal, evidence of Bush's violent past and the facts regarding his prior rape conviction. These findings have support in the district court record.

Muschott discussed possible mitigating evidence with Bush, his brother, his father, his girlfriend, and his brother-in-law. Muschott was well aware of Bush's poor family background and the fact that he had been abused while in prison. The district court found that both Bush's father and brother indicated they did not want to testify, and no other family member came forward despite Muschott's willingness to talk with them. We find no error in the district court's conclusion that Muschott's evaluation of this potential evidence as not "significantly beneficial" was a professionally reasonable one.

 The contention that Muschott failed to investigate and present evidence of Bush's intellectual and psychological impairments is similarly without merit. After Muschott investigated the possibility of psychological mitigation, he concluded that this avenue was one he could not develop. The district court evaluated the evidence on this issue and found that Muschott did not believe, nor did he have reason to believe, that Bush was mentally deficient.

In addition to the information revealed through Muschott's conversations with Bush, Bush's lawyer for the earlier criminal case and Bush's family, Muschott was

---

**2.** The jury knew that petitioner had been convicted of a serious crime, but the jurors did not know that the earlier crime was committed by several young men who kidnapped, robbed, and raped a woman.

aware of a number of facts also known by the prosecution that would rebut an allegation of mental deficiency. Muschott testified that Bush had no problems communicating and gave no indication that he was ever out of touch with reality. Bush displayed intelligence during the events at issue, during his interrogations by law enforcement, and during trial. He demonstrated the ability to formulate options and to make his own decisions. For example, although his accomplices suggested shooting the police officer who stopped them after the murder for a defective taillight, Bush persuaded them to "wait and see what happens." R.6 at 383, Transcript of Evidentiary Hearing (Muschott's recollection of the events). The police officer who had stopped the men in the car described Bush, who was driving and who owned the vehicle, as "calm, cool, and collected." *Id.* Bush instituted measures to regain possession of his car after the police confiscated it. Bush's actions also revealed his appreciation of the criminality of his conduct. He hid the murder weapon. He gave four statements to the police, initially claiming an alibi and later explaining his involvement in the crimes.

Muschott discussed what he knew about petitioner with a psychiatrist, Dr. Tingle, who determined that he could not assist in the defense of the petitioner in the guilt or sentencing phases of the trial. The district court recognized that

> Muschott weighed the very questionable beneficial value of a defense based on psychology against the very real threat that such a defense would open the door for the state to introduce in rebuttal, the details of the 1974 rape and damaging statements of Bush's codefendants. He decided that the real threat outweighed the potential benefit.

District Court Opinion at 34.

Muschott chose not to investigate Bush's psychological history more thoroughly, not to have Bush examined by a psychiatrist or psychologist, and not to present mitigating psychological evidence at the sentencing hearing. Given what Muschott could readily observe about Bush, what Muschott knew of Bush's background and the advice of Dr. Tingle, Muschott acted within the wide range of reasonable professional judgment.

Bush also argues that Muschott failed to investigate and present evidence to show that Bush did not kill or intend to kill. The record does not support this argument. Bush alleges that Muschott should have introduced the statement of Georgiana Williams, Bush's girlfriend, that one of the codefendants had confessed to her that he, not Bush, shot the victim. With the exception of an isolated comment by the prosecution, there was no indication throughout the trial that Bush was the shooter. All of the evidence presented indicated that Bush stabbed the victim and a codefendant shot her. Counsel could quite reasonably believe that the introduction of this statement from Bush's girlfriend would contribute nothing to the sentencing phase of the trial and the jury might have perceived it as self-serving.

There is no reasonable argument to be made under the facts to support Bush's argument that his lawyer should have presented evidence that Bush was physically or psychologically coerced into participating in the underlying felony or in the murder of Ms. Slater. The record clearly indicates Bush's own statements to the contrary. Bush admitted that he agreed with the others to rob someone. R.4 at 755, Trial Transcript. He was an active participant in the robbery and kidnapping. A witness identified Bush as one of the men seen in the store where Slater worked, not the one waiting in the car; Bush admitted to owning both the getaway car and the murder weapon; and he did all the driving on the night of the crime. Bush had already stated that he knew what he was doing throughout the commission of the robbery, kidnapping, and murder.

Muschott's approach to the evidence concerning the extent of petitioner's involvement was reasonable. We agree with the district court that "*Strickland* does not compel an attorney to urge an argument which he reasonably finds to be futile, let

alone one he finds to be false." District Court Opinion at 29.

■ Finally, Bush argues that Muschott should have investigated and presented evidence of petitioner's intoxication at the time of the offense. This argument is completely without merit. Bush admitted that he drank less than the other participants in the crime. As other portions of this opinion describe, Bush's other admissions were that he drove the car used during the commission of the crimes; that he knew what he was doing throughout the crime; and that he schemed against his codefendants to preserve Ms. Slater's life. In addition, as we also discussed earlier, the officer who stopped petitioner and his codefendants on the night of the murder testified that Bush was calm and collected. Bush produced his driver's license and registration without arousing suspicion; he even remained calm when the police stopped him a second time for car registration problems. Clearly, it was an exercise of reasonable professional judgment not to argue intoxication as a mitigating factor.

We have evaluated each of Bush's contentions of his counsel's inadequacy. Bush has not proved that his sentencing counsel provided constitutionally deficient legal representation. For Muschott to alter his strategy after trial and to argue at sentencing that Bush was coerced, mentally incompetent, or significantly intoxicated would have been damaging to Muschott's credibility. Muschott's decisions were well within the scope of reasonable professional judgment.

The trouble with Muschott's strategy, as the district court found, is that "Bush refused to follow it." District Court Opinion at 35. Bush and Muschott had agreed well before trial that Bush would not testify. He insisted on testifying at the last minute. "He waited for his counsel to construct the defense ... and then he pulled the linchpin." *Id.* The effect was devastating.

#### B. Prejudice

We have carefully evaluated all of the evidence proffered by Bush and conclude that he has not proved that had Muschott presented this evidence, a reasonable probability exists that the sentencers would have rejected death as the appropriate penalty. As we have previously noted, petitioner's own statements and actions contradict much of the evidence he contends should have been introduced in mitigation.

### CONCLUSION

The judgment of the district court denying relief is AFFIRMED.

KRAVITCH, Circuit Judge, concurring in part and dissenting in part:

I join the majority's opinion as it relates to Bush's first three claims. I disagree, however, with the majority's conclusion that Bush received effective assistance of counsel as required by the Sixth and Fourteenth Amendments. In my view, Muschott's total failure to investigate Bush's mental health, family, and penal background, as well as his decision not to introduce certain mitigating evidence of which he was aware, rendered his performance constitutionally deficient. A reasonable probability exists that but for this constitutionally inadequate performance Bush would not have been sentenced to death. I thus respectfully dissent from the majority's affirmance of the denial of Bush's petition for habeas corpus relief as to sentencing.

### I.

To investigate and develop available mitigating evidence is a basic and unshakable obligation of defense counsel in all capital cases. *See, e.g., Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984) (holding that counsel must "make reasonable investigations or ... make a reasonable decision that makes particular investigations unnecessary"); *Blanco v. Singletary,* 943 F.2d 1477, 1500 (11th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 2282, 119 L.Ed.2d 207 (1992), *and cert. denied,* — U.S. —, 112 S.Ct. 2290, 119 L.Ed.2d 213 (1992); *Horton v. Zant,* 941 F.2d 1449, 1462 (11th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1516, 117

**1094**

L.Ed.2d 652 (1992); *Middleton v. Dugger,* 849 F.2d 491, 493 (11th Cir.1988). At least since *Lockett v. Ohio,* 438 U.S. 586, 605, 98 S.Ct. 2954, 2605, 57 L.Ed.2d 973 (1978), the importance of presenting mitigating evidence has been a prominent feature of the Supreme Court's Eighth Amendment jurisprudence. *See, e.g., McKoy v. North Carolina,* 494 U.S. 433, 444, 110 S.Ct. 1227, 1234, 108 L.Ed.2d 369 (1990) (quoting *Penry v. Lynaugh,* 492 U.S. 302, 327, 109 S.Ct. 2934, 2951, 106 L.Ed.2d 256 (1989)); *Skipper v. South Carolina,* 476 U.S. 1, 4–5, 106 S.Ct. 1669, 1670–71, 90 L.Ed.2d 1 (1986); *Eddings v. Oklahoma,* 455 U.S. 104, 110–12, 102 S.Ct. 869, 874–75, 71 L.Ed.2d 1 (1982). Making the sentencer aware of all relevant mitigating circumstances is necessary to give practical meaning to the bedrock Eighth Amendment principle that " 'respect for humanity ... requires consideration of the character and record of the individual offender' " in capital cases. *Lockett,* 438 U.S. at 604, 98 S.Ct. at 2964 (quoting *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976)). Reasonable investigation, therefore, (which includes making reasonable decisions not to pursue certain inquiries) is an absolute prerequisite for constitutional assistance of counsel. When counsel breaches the duty of reasonable investigation, even strategic or tactical decisions regarding the sentencing phase, which normally are entitled to great deference, must be held constitutionally deficient. *See, e.g., Horton,* 941 F.2d at 1462.

In my opinion, Muschott failed to conduct even a minimally adequate search into Bush's background. At the evidentiary hearing in the district court, Muschott conceded that he prepared no mitigating evidence whatsoever to present at sentencing. Dist.Ct.Tr. at 402. He never looked into Bush's psychological history. He never sought Bush's school or prison records. *Id.* at 319. He never developed evidence of the hardships of Bush's abusive and tragic life growing up in a family of seasonal farmworkers. *Id.* at 321. He never developed any evidence that might have explained or softened the effect on the jury of Bush's 1974 conviction.[1] *Id.* at 344. These items were not hidden facts, discoverable only through substantial effort. They were basic background facts and records which the most cursory investigation and preparation would have revealed. And, significantly, Muschott admitted that he did not have a reasonable, tactical reason for not seeking or developing much of this evidence. *See, e.g., id.* at 319. He simply did not do it.

Had Muschott conducted a competent investigation he would have discovered information that certainly would have informed, and might very well have altered, his decision not to present any evidence in mitigation. A 1974 report that was included in Bush's incarceration records, for example, stated that Bush had an obsessive-compulsive personality with an incipient pathology, uncertain control of his impulses, and sometimes loosened ties to reality. The reporting doctor worried that Bush was primed for a "possible future psychosis" which might be hastened by "any stress situation."[2] This warning is consistent with the testimony in the district court of Dr. Carbonell, who reported that Bush possesses borderline intellectual functioning and possibly suffers from brain damage and other mental health problems. It suggests that Bush may have suffered from a severe emotional disturbance at the time of the homicide in this case, a statutory mitigating circumstance under Florida law, Fla.Stat.Ann. § 921.141(6)(b). Even if Bush's mental health problems did not rise to the level of a severe emotional disturbance, the 1974 report identifies some mental health problems which could have been introduced at the penalty phase as a nonstatutory mitigating circumstance. At the very least, the report would have placed Muschott on notice that further investiga-

---

**1.** In fact, Muschott admitted he never even obtained the transcript of, or the Division of Youth Services records about, that case. Dist.Ct.Tr. at 296.

**2.** Bush's subsequent years in prison where, as a teenager, he apparently was raped and assaulted would undoubtedly constitute a "stress situation."

tion into Bush's psychological state was necessary.

Muschott had every chance to develop mental health mitigation but neglected to do so. At Muschott's request, the state trial court appointed a psychiatrist, Dr. Tingle, and a psychologist, Dr. Sobel, to assist the defense. Yet Muschott met with Dr. Tingle only once, for approximately thirty minutes, no more than ten minutes of which were spent talking about potential mitigating evidence.[3] He did not meet with Dr. Sobel at all. He did not have either doctor examine or evaluate Bush. Nor did he provide either doctor with Bush's previous psychological reports. Indeed, he *could not* provide the doctors with Bush's records because his failure to conduct a basic documentary investigation left him ignorant of their existence. Based solely on his own relatively cursory and wholly untrained observations that Bush had no problems communicating, had demonstrated the ability to weigh options and make his own decisions, and was "calm, cool, and collected," Muschott abandoned a potentially life-saving sentencing strategy.

The majority holds that "[g]iven what Muschott could readily observe about Bush, what Muschott knew of Bush's background and the advice of Dr. Tingle, Muschott acted within the wide range of reasonable professional judgment." *Ante* at 1092. "[W]hat Muschott knew," however, was crucially limited by his failure to conduct a reasonable documentary investigation. Had Muschott obtained Bush's easily obtainable incarceration records, as he should have, he would have been aware of Bush's earlier psychological reports and surely would have realized the importance of Bush's court-appointed doctors examining him and reviewing his records. Furthermore, Muschott must have known that nothing could be determined reliably about Bush's mental health status without psy-

chological testing and that a mental health strategy should not be abandoned until Dr. Sobel performed those tests. *See* Dist.Ct. Exh. 8, attach. 5 (Dr. Tingle's notes); Exh. 14(d) (Muschott's notes). Dr. Sobel was available to test Bush. Muschott simply declined to have her do the tests.

Muschott likewise was inexcusably unaware of information that would have explained or softened the impact on the jury of Bush's 1974 conviction and thirty-year sentence for rape and robbery. This failure tainted two important defense strategy decisions. First, Muschott decided not to attempt to mitigate the effect on the jury of evidence presented by the State that Bush had been convicted of rape and robbery and sentenced to thirty years' imprisonment.[4] Even more significant, Muschott chose not to present *any* evidence of Bush's difficult family background or positive character traits.[5] He made these decisions because he feared that the State, in rebuttal, would reveal the details of the 1974 crime. Because of his complete failure to investigate, however, Muschott did not know that Florida officials, whose opinion likely would have carried great weight with the jury, were on record as stating that Bush's conduct had been far from the cold act of a heinous criminal. Bush's 1974 presentence investigation report found that he "does not impress one as being a hard nosed street kid. Instead he impresses one as being a youth who has inadvertently involved himself in a very serious adult crime." The report concluded that Bush should suffer the minimum amount of retribution allowable by the court. Bush's sentencing judge went further. He stated that he did not believe that Bush's conduct warranted even the minimum sentence imposed by Florida law, though of course he could not sentence Bush to less than the statutory minimum. If Muschott had been

---

**3.** In an affidavit, Dr. Tingle stated that "[n]o one discussed mitigating circumstances with [him] or asked [him] to conduct an evaluation in that regard."

**4.** Under Florida law, prior conviction of a violent crime is a statutory aggravating circumstance. *See* Fla.Stat.Ann. § 921.141(5)(b).

**5.** Several witnesses would have testified, for example, that Bush is a loving and devoted father to his daughter, who has Down's Syndrome, and that he once saved the life of a young child who was drowning. *See, e.g.,* Affidavits of Debora Mitchell, Denise Bush & Janie Nicholson.

aware of this information, he might very well have chosen to introduce humanizing evidence of Bush's family background and character traits, knowing that if the State attempted to countermand that evidence with the 1974 crime, he could surrebut with the statements of the Florida officials.

In sum, Muschott's investigative effort in preparing for the penalty phase of Bush's trial amounted to one short conversation with Dr. Tingle based solely on Muschott's own inconsiderable and untrained observations and a few conversations with Bush's father, brother, and girlfriend, most of which were initiated by them. In my view, Muschott failed to discharge his duty of reasonable investigation. Consequently, his strategy at sentencing—doing nothing more than asking the jury to listen to the one of Bush's four statements in which he sounded most remorseful—was constitutionally tainted.

Muschott also failed to render constitutionally adequate assistance of counsel when he chose not to introduce mitigating evidence that could not reasonably have opened the door to damaging evidence in rebuttal. Muschott feared that if he introduced mitigating evidence, including Bush's sympathetic background and intellectual and mental health deficiencies, the State would introduce statements by Bush's codefendants that his involvement in the murder had been extensive, as well as details of the 1974 crime. Much of the mitigating evidence that might have persuaded the jury to vote for life, however, was completely distinct from this potential rebuttal evidence. That Bush is the loving father of a daughter with Down's Syndrome or once saved a drowning child, for example, has nothing to do with the details of the 1974 crime or the extent to which Bush participated in the murder, and cannot *reasonably* have given rise to the fear of rebuttal. The same goes for Bush's

mental health problems and for the hardships Bush endured as an abused child in a family of seasonal workers, with a disabled and alcoholic father and a mother who died when he was just a boy.[6]

I agree with the majority that Muschott acted reasonably when he asked the jury to listen to the statement in which Bush sounded most remorseful. The Sixth Amendment problem in this case is not with what Muschott *did* but what he did *not* do. He did not conduct a constitutionally adequate investigation into Bush's background and he did not introduce significant evidence that could not reasonably have given rise to damaging rebuttal. That counsel made many competent decisions does not preclude a finding of ineffective assistance of counsel. The right to effective assistance of counsel may be violated "by even an isolated error of counsel if that error is sufficiently egregious and prejudicial."[7] *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *accord Strickland*, 466 U.S. at 693–96, 104 S.Ct. at 2067–69; *United States v. Cronic*, 466 U.S. 648, 657 n. 20, 104 S.Ct. 2039, 2046 n. 20, 80 L.Ed.2d 657 (1984). Muschott's abdication of his responsibility to investigate and present mitigating evidence was a significant error, in my view, more than sufficiently egregious to implicate Bush's right to constitutionally effective counsel. The range of professional judgment acceptable under the Sixth Amendment is wide, but not boundless.

## II.

The majority also errs in holding that Bush does not satisfy the prejudice prong of *Strickland*. Contrary to the majority's summary conclusion, a reasonable likelihood does exist that but for Muschott's constitutionally deficient performance Bush's jury would have rejected the death penalty. All that is necessary to satisfy

---

6. In addition, the judge had ruled that Bush's inability to cross-examine the codefendants at sentencing rendered their statements about the extent of Bush's participation in the crime inadmissible. *See* Sentencing Hearing Tr. at 48–49.

7. For the same reason, the fact that Bush took the stand at the sentencing phase is not determinative of the Sixth Amendment issue in this case. That Bush himself made a tactical error when he insisted on testifying does not render Muschott's independent failure to prepare for sentencing any more constitutionally palatable.

the prejudice prong in this case is a reasonable probability that *one* additional juror would have voted for life. A reasonable probability is simply a likelihood sufficient to undermine confidence in the jury's death recommendation, not even proof by a preponderance of the evidence. *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2068. Notwithstanding Muschott's constitutionally inadequate performance, the State could muster only seven votes for death. Under Florida law a six-six split constitutes a recommendation against the death penalty. *See Harich v. State,* 437 So.2d 1082, 1086 (Fla.1983), *cert. denied,* 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984). The sentencing judge can override such a recommendation only if the facts suggesting a death sentence are so clear and convincing that virtually no reasonable person can conclude that life imprisonment is an appropriate sentence. *See Tedder v. State,* 322 So.2d 908, 910 (Fla.1975). That standard could not have been met in this case.

Abundant mitigating evidence was available to humanize Bush in the eyes of the jury, including his loving devotion to his child suffering from Down's Syndrome and his borderline intellectual functioning (if not more serious mental health problems). If only some of that evidence had been introduced, the State would not have been able to emphasize to the jury, as it did, that "[t]here has been no testimony concerning the character of the defendant other than the fact that he was previously convicted of a serious crime." Sentencing Hearing Tr. at 155. Because no mitigating evidence whatsoever was introduced, the jury was left with only the prosecution's view: that John Earl Bush possessed no positive human qualities worth sparing.

In *Blanco v. Singletary, supra,* we wrote:

> Given that some members of Blanco's jury were inclined to mercy even without having been presented with any mitigating evidence and that a great deal of mitigating evidence was available to Blanco's attorneys had they more thoroughly investigated, we find that there was a reasonable probability that Blan-

co's jury might have recommended a life sentence absent the errors.

943 F.2d at 1505. Likewise, in this case, nearly half of Bush's jurors were inclined to mercy notwithstanding Muschott's defective performance. Substantial mitigation was available if Muschott had only conducted a basic investigation. There is far more than a mere reasonable probability that John Earl Bush today faces execution because of constitutionally ineffective assistance of counsel.

Accordingly, I respectfully dissent from the denial of habeas relief as to sentencing.